IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Alberta Dockstader, )
)
                              Plaintiff, )
)
        vs. )
)
Commissioner of Social Security )
Administration, )
)                    No. 3:18-cv-8163-HRH
                              Defendant. )
_____ )

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff

Alberta Dockstader has timely filed her opening brief,[1] to which defendant, the Commis-

sioner of the Social Security Administration, has timely responded.[2]  Oral argument was not

requested and is not deemed necessary.

Procedural Background

On December 2, 2014, plaintiff filed applications for disability benefits under Title

II and Title XVI of the Social Security Act, alleging that she became disabled on November

---

[1]Docket No. 11.

[2]Docket No. 13.

25, 2014. Plaintiff alleged that she was disabled due to rapid cycling bipolar disorder. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested a hearing. After an administrative hearing on February 9, 2017, an administrative law judge (ALJ) denied plaintiff's applications. Plaintiff sought review of the ALJ's unfavorable decision. On May 18, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's May 31, 2017 decision the final decision of the Commissioner. On July 17, 2018, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on July 8, 1987. She was 29 years old at the time of the administrative hearing. Plaintiff has an Associate's Degree. Plaintiff lives with her parents. Plaintiff's past relevant work includes work as a teacher's aide and a housekeeper.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through March 31, 2020."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 17.

[4]The five steps are as follows:

Step one: Is the claimant presently engaged in substantial

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since November 25, 2014, the alleged onset date. . . ."[5] The ALJ noted that plaintiff had worked at a preschool after her alleged onset date, but found that "this work activity did not rise to the level of substantial gainful activity."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: congenital hip impairment, status post hip replacement, major depressive disorder, and

---

[4](...continued)
>gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
>Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
>Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 17.

[6]Admin. Rec. at 17-18.

borderline personality disorder. . . ."[7] The ALJ found plaintiff's hydrocephalus and anorexia non-severe.[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[9] The ALJ considered Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations with regard to concentration, persistence, or pace; and moderate limitations in adapting or managing oneself.[10] The ALJ thus found that the "paragraph B" criteria were not satisfied.[11] The ALJ also found that the "paragraph C" criteria were not satisfied.[12]

---

[7]Admin. Rec. at 18.

[8]Admin. Rec. at 18.

[9]Admin. Rec. at 18.

[10]Admin. Rec. at 18-19.

[11]Admin. Rec. at 19.

[12]Admin. Rec. at 19-20.

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(c) except the claimant can perform simple, routine and repetitive tasks involving simple work related decisions and simple instructions with few changes in the workplace. Resolving conflicts with others could not be a primary work responsibility. The claimant is able to interact occasionally with the public, coworkers, and supervisors.[13]

The ALJ found plaintiff's symptom statements less than credible because she "has been treated with medication and attended counseling which has addressed situational stressors[,]" because she "continued to volunteer at a school and work as a substitute teacher[,]" because she "received unemployment benefits after the alleged onset date[,]" and because of her daily activities.[14]

The ALJ gave minimal weight to Dr. Taylor's opinion.[15] The ALJ gave great weight[16] to Dr. DeFelice's opinion[17] that plaintiff was not precluded from all work. The ALJ also

---

[13]Admin. Rec. at 20.

[14]Admin. Rec. at 23.

[15]Admin. Rec. at 24. Dr. Taylor's opinion is discussed below in detail.

[16]Admin. Rec. at 25.

[17]On March 5, 2015, Dr. DeFelice opined that plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate

(continued...)

gave great weight[18] to Dr. Gallucci's opinion[19] that plaintiff was not precluded from all work.

---

[17](...continued)
difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. Admin. Rec. at 70. Dr. DeFelice also opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures, to understand/carry out/remember short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination or proximity to others without being distracted by them, to make simple work-related decisions, to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior, to achieve basic standards of neatness and cleanliness, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others; was moderately limited in her ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting; and was markedly limited in her ability to carry out detailed instructions. Admin. Rec. at 71-73.

[18]Admin. Rec. at 25.

[19]On June 2, 2015, Adrianne Gallucci, Psy.D, opined that plaintiff had mild restrictions of daily living; moderate difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Admin. Rec. at 95. Dr. Gallucci also opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures, to understand/carry out/remember short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination or proximity to others without being distracted by them, to make simple work-related decisions, to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others; was moderately limited in her ability to understand and remember detailed instructions, to maintain attention and concentration

(continued...)

The ALJ considered the lay testimony of plaintiff's mother[20] but did not assign a specific weight to this testimony.[21]  The ALJ considered Ilene Timpson's lay testimony[22] and gave great weight to her opinion that plaintiff was not precluded from doing simple work.[23]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work. . . ."[24]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform. . . ."[25]  The ALJ found that plaintiff could

---

[19](...continued)
for extended periods, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting; and was markedly limited in her ability to carry out detailed instructions.  Admin. Rec. at 97-98.

[20]Nancy Dockstader provided third-party function reports on January 26, 2015 and April 27, 2015.  Admin. Rec. at 242-249; 271-278.

[21]Admin. Rec. at 24.

[22]Timpson was plaintiff's supervisor at the Special Needs Preschool at Colorado City Unified School, the school at which plaintiff volunteered and sometimes worked as a substitute.  Admin. Rec. at 301.

[23]Admin. Rec. at 24.

[24]Admin. Rec. at 25.

[25]Admin. Rec. at 25.

work as a laundry worker, a retail marker, or a sandwich maker.[26] This finding was based on the testimony of the vocational expert.[27]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from November 25, 2014, through the date of this decision. . . ."[28]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But,

---

[26]Admin. Rec. at 26.

[27]Dr. Ann Wallace testified as the vocational expert. Admin. Rec. at 57-61.

[28]Admin. Rec. at 26.

the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred as to Dr. Taylor's opinion. On September 30, 2015, Dr. Taylor noted that she had seen plaintiff for weekly counseling since November 5, 2013.[29] Dr. Taylor opined that plaintiff had moderate restrictions of daily living; moderate difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of extended decompensation.[30] Dr. Taylor opined that plaintiff would miss more than four days of work per month due to her mental impairments.[31] Dr. Taylor opined that plaintiff was not significantly limited in her ability to understand/remember/carry out very short and simple instructions; was moderately limited in her ability to remember locations and work-like procedures, understand/remember/carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; and had marked limitations in her ability to recognize and find solutions to problems in day-to-

---

[29]Admin. Rec. at 456.

[30]Admin. Rec. at 465.

[31]Admin. Rec. at 465.

day life, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavior extremes, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.[32] Finally, Dr. Taylor opined that plaintiff was not capable of working 8 hours per day, 5 days per week.[33]

Dr. Taylor was a treating source, but the ALJ only gave minimal weight to her opinion.[34] "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating

---

[32]Admin. Rec. at 466-468.

[33]Admin. Rec. at 469.

[34]Admin. Rec. at 24.

doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Taylor's opinion was contradicted by Dr. DeFelice's and Dr. Gallucci's opinions. Thus, the ALJ was required to provide specific and legitimate reasons for giving Dr. Taylor's opinion only minimal weight.

The ALJ gave two reasons for rejecting Dr. Taylor's opinion. First, the ALJ found that Dr. Taylor's opinion that plaintiff had "a marked limitation in [her] ability to recognize and find solutions to problems in day-to-day life" was "inconsistent with the claimant's own statements that she is volunteering and working at a school."[35] Second, the ALJ found Dr. Taylor's opinion inconsistent with plaintiff's family structure, which "requires the claimant to interact[] with multiple family members."[36] Although the ALJ did not expressly tie this reason to a specific portion of Dr. Taylor's opinion, it appears to be directed to Dr. Taylor's opinion that plaintiff had marked limitations in her "ability to work in coordination [with] others without being distracted by them."[37]

As to the first reason, this was not a legitimate reason because plaintiff was only able to volunteer and work at the school because numerous accommodations were made for her.

---

[35]Admin. Rec. at 24.

[36]Admin. Rec. at 24.

[37]Admin. Rec. at 24.

The record shows that plaintiff was able to volunteer and work at the school because she had a flexible schedule, was isolated from others, and could take time off when she needed it.[38] Moreover, the record shows that plaintiff never volunteered or worked eight hours a day, five days a week, but rather that she volunteered four days a week for about six hours per day, and that if she "worked" on any given day, it might be for as little as one hour.[39] In other words, the record shows that plaintiff primarily worked on her own schedule and that she spent most of her time volunteering, rather than working for pay. The record also shows that plaintiff volunteered in her sisters' classrooms because they could make the necessary accommodations.[40] Given the number of accommodations plaintiff was receiving, her ability to volunteer and work was not inconsistent with Dr. Taylor's opinion.

This case is similar to <u>McAllister v. Sullivan</u>, 888 F.2d 599 (9th Cir. 1989). There, the ALJ had rejected Dr. Nidever's opinion, in part, because it was contrary to McAllister's "activities and interests[.]" <u>Id.</u> at 602. The court found that Dr. Nidever's opinion was not necessarily "contradicted by McAllister's 'activities and interests'" because "McAllister testified that he was able to perform volunteer work because he felt free to leave at any time[,]" which the court found to be "a plausible explanation for his ability to hold such jobs but not gainful employment." <u>Id.</u> at 603. Similarly here, the accommodations that were

_____

[38]Admin. Rec. at 300.

[39]Admin. Rec. at 40.

[40]Admin. Rec. at 55.

made for plaintiff allowed her to volunteer and sometimes work at the school, but these accommodations are a plausible explanation for why she could volunteer and work at the school but not maintain gainful employment.

Defendant points out that plaintiff testified that she rode with a friend to the school[41] and suggests that if plaintiff did not have her own transportation, she would not be able to leave whenever she wanted, as she contends. But the fact that plaintiff did not drive herself to school does not mean that she could not leave when she needed to. It would just mean she would have to find someone to give her a ride home. In addition, as a volunteer, plaintiff could simply leave the classroom if her symptoms dictated, which it is unlikely she would be able to do if she were working full time.

In sum, the first reason given by the ALJ for giving Dr. Taylor's opinion minimal weight was not legitimate. Plaintiff's ability to volunteer and work at the school with multiple accommodations was not inconsistent with Dr. Taylor's opinion that plaintiff had "a marked limitation in [her] ability to recognize and find solutions to problems in day-to-day life."[42] Plaintiff's ability to volunteer and work at the school with multiple accommodations was also not inconsistent with Dr. Taylor's opinion that plaintiff was not capable of full-time work.

As for the second reason, that plaintiff's family structure was inconsistent with Dr.

---

[41]Admin. Rec. at 41.

[42]Admin. Rec. at 24.

Taylor's opinion, the ALJ explained that plaintiff was "married and is the sixth sister wife" and that plaintiff testified that she lived with her "parents who are in a polygamous relationship."[43] The ALJ found that this family structure meant that plaintiff had to interact with multiple family members, which the ALJ implied was inconsistent with Dr. Taylor's opinion that plaintiff had marked limitations in her ability to work in coordination with others.[44]

Defendant argues that this was a legitimate reason for rejecting Dr. Taylor's opinion because plaintiff's interactions with her family members demonstrated an ability to make plans independently of others. But, the ALJ did not specifically find plaintiff's ability to interact with her family inconsistent with Dr. Taylor's opinion about plaintiff's ability to make independent plans. Rather, the ALJ appears to have found that plaintiff's ability to interact with her family was inconsistent with Dr. Taylor's opinion about plaintiff's ability to work in coordination with others.

The second reason given by the ALJ was not legitimate. That plaintiff's family structure involved multiple members has little to do with plaintiff's ability to work in coordination with others. Plaintiff's interaction with her family members is likely to be quite different from her interaction with co-workers and supervisors. More importantly, the record as whole indicates that plaintiff had difficulty interacting with the family members in her

---

[43]Admin. Rec. at 24.

[44]Admin. Rec. at 24.

marriage home, as evidenced by the fact that she had moved out of that home and had been living with her parents for more than one year at the time of the administrative hearing.[45]

Defendant also suggests that the ALJ properly rejected Dr. Taylor's opinion that plaintiff would have a marked limitation in her ability to travel to unfamiliar places because plaintiff's anxiety associated with a trip to Missouri had more to do with returning to a stressful situation than the actual traveling.[46] But the ALJ did not mention plaintiff's ability to travel as a reason for rejecting Dr. Taylor's opinion. The court may only review "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

The two reasons given by the ALJ for giving Dr. Taylor's opinion minimal weight were not legitimate. The ALJ erred as to Dr. Taylor's opinion.

Plaintiff next argues that the ALJ erred in finding her symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not

---

[45]Admin. Rec. at 479, 512, 540.

[46]Admin. Rec. at 531.

required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's symptom statements less than credible because she "has been treated with medication and attended counseling which has addressed situational

stressors[,]" because she continued to volunteer and work as a substitute teacher, because she had received unemployment benefits after the alleged onset date, and because her statements were inconsistent with her daily activities.[47]  Plaintiff argues that none of these were clear and convincing reasons.

The ALJ first found plaintiff's statements less than credible because she "has been treated with medication and attended counseling which has addressed situational stressors."[48]  It is not clear whether the ALJ was attempting to indicate that plaintiff's symptoms improved with treatment or whether the ALJ was suggesting that plaintiff's symptoms were the result of "situational stressors"[49] rather than her diagnosed mental health impairments.  If it were the former, then this would not have been a convincing reason because plaintiff's symptoms waxed and waned over time.  And, as the Ninth Circuit has explained in the context of

> discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.  Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison, 759 F.3d at 1017.  If the ALJ were suggesting that plaintiff's symptoms were the result of "situational stressors," this would not have been a convincing reason because the

---

[47]Admin. Rec. at 23.

[48]Admin. Rec. at 23.

[49]Admin. Rec. at 23.

medical evidence of record shows that plaintiff's symptoms flowing from her mental impairments were caused by more than "situational stressors." The very fact that plaintiff attended weekly counseling sessions with Dr. Taylor since 2013 indicates that plaintiff's symptoms were a result of more than "situational stressors."

The second reason given by the ALJ was that plaintiff continued to volunteer at the school and work as a substitute. While the ALJ noted that plaintiff's work would not constitute substantial gainful activity, the ALJ found that this volunteering and working "strongly suggests that she has not been as limited as alleged."[50] This was not a convincing reason for the reason discussed above in connection with Dr. Taylor's opinion, namely that multiple accommodations were made for plaintiff to be able to volunteer and work at the school.

The third reason given by the ALJ was that plaintiff had received unemployment benefits after the alleged onset date. The ALJ found that this "raises the question whether she was as limited as alleged" because "[i]n order to collect benefits, the claimant was required to state that she was ready, willing, and able to accept employment."[51] But, the record does not establish whether plaintiff held herself out as being able to work full time or part time, and in the Ninth Circuit, "[o]nly the former is inconsistent with [a claimant's] disability allegations." Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162 (9th

---

[50]Admin. Rec. at 23.

[51]Admin. Rec. at 23.

Cir. 2008). As defendant points out, the record shows that plaintiff worked full time as a teacher's aide from 2009-2014,[52] and that, in 2015, she intended to ask for this job back.[53] But, that does not necessarily mean that plaintiff was holding herself out for full-time work. The record is not clear on that issue. Thus, the third reason given by the ALJ was not clear and convincing.

The fourth reason the ALJ found plaintiff's symptom statements less than credible was because they were inconsistent with her daily activities. The ALJ noted that plaintiff "reported she spen[t] most of her day walking, working at a local school, or volunteering her time[,]" that she "reported she liked music," that "[o]n a regular and routine basis, [she] is able to drive, complete her housework, and babysit[,]" and that "[s]he also participated in art and music for leisure. . . ."[54] But, the ALJ did not explain how these activities would translate into an ability to work full time. To "conclude that a claimant's daily activities warrant an adverse credibility determination," the ALJ must "make 'specific findings relating to [the daily] activities' and their transferability. . . ." Orn, 495 F.3d at 639 (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). The ALJ made no such findings.

Defendant contends that the ALJ also rejected plaintiff's statements because they were inconsistent with the statements she made to her treatment providers. Defendant points out

---

[52]Admin. Rec. at 236.

[53]Admin. Rec. at 560.

[54]Admin. Rec. at 23.

the ALJ noted that plaintiff reported that she was doing well in November 2014 and March 2015[55] and seems to be arguing that this is sufficient evidence to support a finding that plaintiff's symptom statements were inconsistent with the statements she made to her treatment providers. But, this was not a reason given by the ALJ and as noted above, the court can only review reasons provided by the ALJ.

The ALJ gave four reasons for finding plaintiff's symptom statements less than credible. None of these reasons were clear and convincing. Thus, the ALJ erred as to plaintiff's credibility.

Because the ALJ erred as to Dr. Taylor's opinion and plaintiff's credibility, the court must consider whether to remand this matter for an award of benefits or whether to remand for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at

---

[55]Admin. Rec. at 22.

1021).  But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"  Id. (quoting Garrison, 759 F.3d at 1021).

A remand for an award of benefits is appropriate here because the record is fully developed and further proceedings would not be helpful.  Dr. Taylor opined that plaintiff would miss more than four days of work per month due to her mental impairments.[56]  Dr. Wallace testified that there would be no work for a person who missed more than two days of work per month.[57]  Thus, if Dr. Taylor's opinion were credited as true, the ALJ would be required to find that plaintiff is disabled.

<u>Conclusion</u>

The final decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 20th day of March, 2019.

/s/ H. Russel Holland
United States District Judge

---

[56]Admin. Rec. at 465.

[57]Admin. Rec. at 59.